UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GILBERT LEE POOLE,

       Petitioner,                               Case No. 08-12955
                                                             HON. GEORGE CARAM STEEH

vs.

JEFFREY WOODS,

       Respondent.

_____/

ORDER ACCEPTING AND ADOPTING
REPORT AND RECOMMENDATION [Dkt.#13], DENYING PETITIONER'S MOTION
FOR LEAVE TO SUPPLEMENT OBJECTIONS BY COUNSEL AT A LATER DATE
[#18], DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING
CERTIFICATE OF APPEALABILITY AS TO PETITIONER'S DUE PROCESS CLAIM
ONLY

I. INTRODUCTION

On August 9, 2011, Magistrate Judge Laurie J. Michelson filed a report and recommendation recommending that the court deny petitioner's request for a writ of habeas corpus. On September 21, 2011, petitioner filed his objections to the report and recommendation.

The instant matter arises out of petitioner's June 6, 1989 conviction for first degree premeditated murder of Robert Mejia, MICH. COMP. LAWS § 750.316(1)(a) and first degree felony murder, MICH. COMP. LAWS § 750.316(1)(b) in the Oakland County Circuit Court, Pontiac, Michigan. Petitioner was sentenced to life imprisonment without the possibility of

parole. In concluding that petitioner is not entitled to the writ of habeas corpus, the magistrate judge found that all of petitioner's claims, save his due process claim concerning the admission of Dr. Allan Warnick's bite mark testimony, are barred by the applicable statute of limitations. The magistrate judge further concluded that while erroneously admitted, Dr. Warnick's bite mark testimony did not deprive the petitioner of a fundamentally fair trial. Petitioner raises several objections to the magistrate judge's report and recommendation. Upon review of the parties' briefs, the report and recommendation, petitioner's objections, and the Rule 5 materials, the court concludes that the magistrate judge reached the correct conclusion for the proper reasons. Petitioner's petition for a writ of habeas corpus is denied and a certificate of appealability shall not issue in this matter.

## II.  ANALYSIS

### A.  Standard of Review

The standard of review to be employed by the court when examining a report and recommendation is set forth in 28 U.S.C. § 636. This court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." Id.

### B.   Statute of Limitations

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA), a one-year statute of limitations applies to all petitions filed under 28 U.S.C. § 2254 seeking the issuance of a writ of habeas corpus. See 28 U.S.C. § 2244(d)(1). The limitation period begins to run from the latest of: "(A) the

date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [or] (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1).

A petitioner whose conviction becomes final before the effective date of the AEDPA has one year after the effective date of the AEDPA, or until April 24, 1997, in which to file an action seeking habeas corpus relief. See Cook v. Stegall, 295 F. 3d 517, 519 (6th Cir. 2002); Allen v. Siebert, 552 U.S. 3, 5 (2007). Here, the Michigan Supreme Court denied petitioner's request for leave to appeal on June 25, 1993 and denied his motion for reconsideration on August 27, 1993. Petitioner did not seek certiorari from the United States Supreme Court within the ninety day deadline for seeking such relief. As such, direct review of petitioner's conviction and sentence concluded no later than November 25, 1993, or prior to the effective date of the AEDPA (April 24, 1996). Petitioner therefore was required to file the present § 2254 petition on or before April 24, 1997. Petitioner did not file his petition for a writ of habeas corpus until July 10, 2008. Accordingly, petitioner's petition is untimely unless he can establish that § 2244(d)(1)(D) applies, or that he filed the present action within one year from the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

The magistrate judge concluded that none of petitioner's claims, except for his due process claim, fall within the purview of 28 U.S.C. § 2244(d)(1)(D).[1] The magistrate judge

---

[1] These claims include:
II.     Newly presented evidence requires a court to either reverse the convictions or

concluded that petitioner's due process claim falls within § 2244(d)(1)(D) because he could not have discovered the factual predicate of this claim, specifically that Dr. Warnick's bite mark testimony lacked scientific basis, until September of 2005 when the prison law library obtained the opinion of Ege v. Yukins, 380 F. Supp. 2d 852 (E.D. Mich. 2005).  In Ege, a conditional writ of habeas corpus was granted and affirmed on appeal because the admission of Dr. Warnick's bite mark testimony deprived Ms. Ege of a fundamentally fair trial.  Ege v. Yukins, 485 F. 3d 364, 374-78 (6th Cir. 2007).  In so holding, the Ege court found that "Dr. Warnick's statement that among the 3.5 million residents of the Detroit metropolitan area, Ege's teeth, and *only* Ege's teeth, could have made the mark on [the victim]'s cheek, was without doubt highly prejudicial." Id. at 376-77. (emphasis in original).

---

      provide a hearing to determine whether bite mark interpretation has met the Davis-Frye/Daubert standard for admissibility of purportedly scientific evidence under MRE 702.

III.    Pursuant to 18 U.S.C.A. § 3600, petitioner is entitled to DNA testing of all biological evidence presented at trial.

IV.    Petitioner's confrontation rights under the Sixth Amendment and due process rights to a fair trial under the Fourteenth Amendment were violated when:
- A.    A composite drawing was represented as the sole drawing and that it "nails" Petitioner.
- B.    Forensic scientist David Woodford's presence as a res gestae witness was waived by defense counsel –(without Petitioner's consent)–and Mr. Woodford's hearsay report was misrepresented to the jury and entered into evidence–when the report actually established that [b]lood-type A found on the Victim did not match Petitioner or the Victim;
- C.    The victim's mother's presence was waived by defense counsel –(without Petitioner's consent).

V.    Petitioner was denied a fair trial based upon the prosecutor's improper comments during closing rebuttal argument.

VI.    Petitioner was denied effective assistance of counsel under the Sixth Amendment.

VII.    Petitioner was denied effective assistance of appellate counsel under the Sixth Amendment.

Dr. Warnick's testimony at petitioner's trial was similar to his testimony during Ms. Ege's trial, specifically Warnick opined that the odds of anyone other than petitioner having made a bite mark appearing on Mejia was "2.1 billion to one." After obtaining a copy of the Ege decision, petitioner filed for state post conviction relief on November 27, 2005.[2]

The court agrees with the magistrate judge that petitioner could not have discovered the factual predicate underlying his due process claim earlier than September of 2005, when he received a copy of the Ege opinion from the prison law library. After the trial court, and the Michigan Court of Appeals denied petitioner relief on his state post conviction petition, the Michigan Supreme Court denied leave to appeal on April 28, 2008. Petitioner filed the present petition on July 10, 2008, therefore his due process claim was filed within the one year limitations period set forth in the AEDPA.

The court also agrees with the magistrate judge's conclusion that his remaining claims are time barred, none of these claims rely on the discovery of Dr. Warnick's discredited bite mark testimony, therefore § 2244(d)(1)(D) is inapplicable. Application of § 2244(d)(1)(D) to petitioner's habeas petition must be decided on a claim by claim basis. Id. at 373-74 (denying application of § 2244(d)(1)(D) to Ege's ineffective assistance of counsel claim because it did not rest upon the discovery of Dr. Warnick's discredited expert testimony and was time barred under § 2244(d)(1)(A)).

---

[2] This tolled the limitations period. Under § 2244(d)(2), the period of limitation is tolled during the time that a properly filed post-conviction motion is pending in state court. 28 U.S.C. § 2244(d)(2). "[T]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment . . . shall not be counted toward any period of limitations under this subsection." Walker v. Smith, 360 F. 3d 561, 563 (6th Cir. 2004) (citing 28 U.S.C. § 2244(d)(2)).

Petitioner objects to the magistrate judge's conclusion that equitable tolling does not apply to save his time-barred claims. Petitioner argues that he is actually innocent, therefore he is entitled to equitable tolling. In determining whether petitioner is entitled to equitable tolling based on actual innocence, petitioner "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." McCray v. Vasbinder, 499 F. 3d 568, 571 (6th Cir. 2007). "To be credible, a gateway claim requires new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." Id. (citing House v. Bell, 547 U.S. 518 (2006)). The court must "consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." Id.

Here the magistrate judge thoroughly considered all of the evidence as a whole and concluded that petitioner cannot show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. The court agrees with the magistrate judge's conclusion. In his objection, petitioner cites to the factual evidence he considers corroborative of his innocence, specifically that his ex-girlfriend, Connie Cook's, testimony was impeached, that no blood matching petitioner's was recovered from the victim or from the crime scene, the prosecutor violated Brady v. Maryland, 373 U.S. 83, 87 (1963)[3] by suppressing at least two other composite sketches, which arguably do not look

---

[3] Throughout his objections, petitioner argues that the magistrate judge failed to address his Brady claim. In order to state a cognizable claim under Brady, petitioner must show: (1) the evidence at issue is favorable to him, either because it is exculpatory or impeaching; 2) the state suppressed the evidence and 3) prejudice resulted. See Strickler v. Greene, 527 U.S. 263, 281-82 (1999). No Brady violation occurs when a defendant knew or should have known the essential facts permitting him to take

-6-

like petitioner, while representing to the jury that only one composite drawing was produced which "nails" petitioner, no physical evidence linking petitioner to the crime scene was introduced at trial, and at least one eye witness testified that he did not see the victim and petitioner leave Popper's Bar together the night Mejia was murdered.

Similar to the arguments presented in his underlying § 2254 petition, petitioner's objection cites only to some of the evidence presented during his trial. Petitioner would have the court ignore the eyewitness testimony from Mejia's friend, Robert Lisk, that he saw Mejia leave the bar with petitioner and a Popper's employee, Charles York, who also testified that he saw Mejia and petitioner leave the bar together. Both of these witnesses identified petitioner as the individual they saw leaving the bar with petitioner.

Petitioner also insists that Cook's testimony is totally unreliable because she gave statements that "vary in key respects." It is true that parts of Cook's testimony was impeached, namely she initially told investigators that the murder occurred in January of 1988, rather than June of 1988, and she also initially informed the police that petitioner told her of the murder while she and petitioner were living in North Carolina, rather than on the night of the murder was corroborated at trial. However, the magistrate judge points out that Cook's testimony was not wholly impeached. Her testimony concerning petitioner's confession to the murder had corroboration. She testified that after he confessed, he

---

advantage of the information, or where the evidence was available through another source. See Spirko v. Mitchell, 368 F. 3d 603, 610 (6th Cir. 2004).

In support of his argument that the prosecution violated Brady, petitioner attaches a news article from the Oakland Press, dated June 16, 1988, which describes, as well as produces photocopies of these allegedly suppressed composite sketches. Petitioner cannot show that the prosecution suppressed these sketches because they were available through another source, specifically the news media. His argument concerning Brady is without merit.

retrieved his bloody watch from his car console. Blood of a type matching that of Mejia was found in the console of petitioner's car. She also testified that petitioner told her that he and Mejia discussed using cocaine and that Mejia took him to somebody's house to get the cocaine. Mejia's friend, Tony Taylor, testified that Mejia came by his house around 2:00 a.m. on June 6, 1988 requesting cocaine. Petitioner also confessed to Cook that he "slit [Mejia's] throat" and the medical examiner who performed the autopsy testified that a stab wound to Mejia's neck was likely the wound that caused his death. Finally, Cook's description of petitioner's clothing on the night of the murder was similar to what Lisk and another Popper's employee, James Scherrer, described him as wearing that night.

The magistrate judge correctly found that petitioner fails to show that, absent Dr. Warnick's testimony, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Petitioner's objection is overruled.

## C. Magistrate Judge's Summary of Case Background

Petitioner also objects to the magistrate judge's summary of the case background. Petitioner argues that the magistrate judge omitted several facts that are necessary to resolution of his habeas corpus petition. Petitioner's objection has no merit. Many of the facts he claims are omitted from the magistrate judge's report are simply irrelevant to his due process claim and to the extent he presents them in support of his actual innocence gateway claim, they do not alter this court's conclusion that petitioner has failed to show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. For example, petitioner takes issue with the magistrate judge's statement that the petitioner was out of work at the time of the crime. Petitioner claims that he testified that he could not keep a job for long, but he always had work. A review of

petitioner's other arguments concerning omitted facts are either irrelevant to resolution of his petition, or are inaccurate depictions of the actual evidence presented at trial. Petitioner's objection is overruled.

### D. DNA Testing

The magistrate judge correctly concluded that petitioner is not entitled to DNA testing under 18 U.S.C. § 3600, which requires a federal court to order DNA testing when certain conditions are met. See 18 U.S.C. § 3600(a). Section 3600(a) applies to individuals who have been convicted for violating federal law, and not individuals such as petitioner, who is serving a sentence for violating state law. Id. Petitioner objects to the magistrate judge's conclusion because she failed to allow petitioner "an opportunity to amend his complaint to reflect the proper federal statute to accomplish the release of the biological material so that DNA testing may be performed." Michigan law provides petitioner the avenue for obtaining DNA testing. See MICH. COMP. LAWS § 770.16. In any event, this claim is time barred as discussed above. Petitioner's objection is overruled.

### E. Due Process Claim

Finally, the magistrate judge correctly concluded that petitioner's due process claim does not warrant relief. A defendant's right to due process is violated "only if an evidentiary ruling is 'so egregious that it results in a denial of fundamental fairness.'" Ege, 485 F. 3d at 375. "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." Id. (citing Brown v. O'Dea, 227 F. 3d 642, 645 (6th Cir. 2000)). The magistrate judge concluded that the state court was not objectively unreasonable in determining that the admission of Dr. Warnick's testimony did not deprive petitioner of a

fundamentally fair trial. The court agrees with the magistrate judge's conclusion.

Petitioner's objection asserts that his case is factually similar to Ege v. Yukins, supra, however that argument is unavailing. In Ege, unlike the present case, there was only one piece of physical evidence–Dr. Warnick's bite mark testimony. Ege, 485 F. 3d at 376-77. Additionally, in concluding that Dr. Warnick's bite mark testimony was a "crucial, critical, highly significant factor[,]" the Ege court relied on the fact that the state waited until it obtained Dr. Warnick's bite mark testimony to bring charges against Ege, some nine years after the crime occurred.

> This case differs from other circumstantial evidence cases, however, in that it appears the prosecution was not willing to try Ege until it had Dr. Warnick's bite mark testimony, indicating its desire to have in hand one piece of physical evidence potentially linking Ege to the crime.
>
>   *      *      *
>
> If the prosecution felt that the bite mark evidence was so important, it does not take much of a cognitive leap to believe that the jury viewed it as important as well.

Id. at 377. As described above, there was considerable physical evidence presented at trial, as well as eyewitness testimony identifying petitioner as the last known person seen with Mejia. Petitioner's objection is overruled.

### F. Certificate of Appealability

Before petitioner may appeal the court's decision denying his petition for a writ of habeas corpus, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3)(B); Fed. R. App. P. 22(b); *In re Certificates of Appealability*,

106 F. 3d 1306, 1307 (6th Cir. 1997). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires that petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a prisoner's petition is denied on procedural grounds, a certificate of appealability "should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. 473, 484 (2000).

Petitioner is not entitled to a certificate of appealabiltiy as to this court's procedural ruling that the statute of limitations bars all of his claims, except for his due process claim; jurists of reason could not conclude that it is debatable that these claims are barred by the statute of limitations. However, the court will grant petitioner a certificate of appealability as to petitioner's due process claim because reasonable jurists could find this court's assessment of his due process claim debatable or wrong. Tennard, 542 U.S. at 282.

### III. CONCLUSION

For the reasons set forth above, Magistrate Judge Laurie J. Michelson's August 9, 2011report and recommendation is ACCEPTED and ADOPTED as this court's conclusions of law.

Petitioner's motion for leave to supplement objections by counsel at a later date is DENIED.

Petitioner's petition for a writ of habeas corpus is DENIED and this cause of action

-11-

is dismissed.

Petitioner's motion for a certificate of appealability is GRANTED as to his due process claim only.

SO ORDERED.

Dated: September 28, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 28, 2011, by electronic and/or ordinary mail and also to Gilbert Poole at Kinross Correctional Facility, Central Complex, 16770 S. Watertower Drive, Kincheloe, MI 48785.

S/Josephine Chaffee
Deputy Clerk

---